IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DIDION MILLING, INC., DERRICK CLARK,
SHAWN MESNER, JAMES LENZ,
ANTHONY HESS, and JOEL NIEMEYER,

                Defendants.

ORDER

22-cr-55-jdp

---

The court held a conference on August 25 to address the remaining pretrial motions and provide guidance for trial preparation. This order will summarize the court's rulings, some of the trial procedures, and the deadlines the court imposed during the conference.

**A. Motions**

The court clarified its previous ruling that Colin Campbell may testify about the likelihood that regulatory agencies would take enforcement action against Didion based on agency past practice and because the violations at issue had little environmental impact. Both Campbell and any government rebuttal witnesses are restricted to testifying about how the agencies responded to permit regulations directly related to the environmental violations at issue in this case, specifically those related to the baghouses.

The court will exclude the communications between Didion's insurer and Didion employees, including Lenz, in which the employees tried to mislead the insurer about problems with Didion's explosion protection systems and electrical installations. The court rejected the government's contention that the evidence is relevant to the conspiracy under Count 4, reasoning that the evidence is too tenuously connected to what the jury must actually decide.

The court will not allow evidence merely because it is within object of conspiracy. Evidence may be admitted to prove Count 4 if it is relevant to prove one of the overt acts, the manner or means of accomplishing the conspiracy, or one of three crimes that are the basis for the conspiracy. False statements to the insurers don't meet that test. For similar reasons, the court will not allow evidence about past fires at the mill or inadequate machine guarding to prove the Count 4 conspiracy.

The court will allow evidence about Didion's routine use of compressed air for cleaning at the mill as to show, for Count 9, that Clark testified falsely about not knowing about the use of compressed air.

The court will allow evidence showing that Clark had been informed about one past fire at the mill because that is evidence of false testimony under Count 9. The government contended that more than a dozen other fires were relevant to showing defendants' knowledge of the dangers of combustible dust, but there is ample evidence being admitted on that topic already. This evidence actually shows defendants' knowledge of ignition sources. But any probative value that evidence has is substantially outweighed by the danger of unfair prejudice, so the court will exclude the evidence of the other fires under Rule 403.

The court will allow evidence that Clark was aware that Didion's baghouses lacked explosion protection, including evidence that Clark was familiar with the baghouses at the mill, that he had conversations with other employees about the baghouses, and that he had sponsored a proposal for fitting the mill with more explosion protection. Defendants may cross examine the government's witnesses on these issues about the extent of Clark's knowledge. The court will allow for use against Didion a 2013 email that Lenz sent to Didion's insurer stating that none of the baghouses were protected. The court will reserve a ruling on this exhibit as

2

evidence against Clark pending a showing by the government that the email qualifies as a co-conspirator statement under Rule 801(2)(d)(E).

The court will not allow evidence that Didion wasn't checking baghouse pressure readings for interior-exhausting baghouses as evidence that Didion wasn't checking baghouse pressure readings for exterior-exhausting baghouses. This isn't admissible evidence of willfulness under Count 2 or of the conspiracy under Count 4. The government did not attempt to show that the evidence qualifies as routine practice under Rule 406, so the court will exclude it because it is essentially propensity evidence.

The court will allow evidence about air permit violations at the ethanol plant to support the allegation from paragraph 82 of the indictment that Didion, Clark, and Lenz filed false certifications of compliance about the air permit. The same air permit covered the corn mill and the ethanol plant. But the evidence will be limited to what is needed to show the false certification.

The court will conditionally exclude evidence about 2001 OSHA citations for violations of 29 U.S.C. § 1910.272(j) at Didion's Johnson Creek facility. The limited probative value of these citations to show Didion's awareness of § 1910.272(j) is substantially outweighed by the danger of unfair prejudice to Didion based on a suggestion of propensity. But if Didion denies knowledge of § 1910.272(j), the court will allow the government to use the 2001 citations to show Didion's knowledge of the regulation.

The court GRANTED as unopposed the government's motion to substitute Charles Vergara for Bejamin Harrison, Dkt. 383. Vergara's testimony will be limited to facts and opinions disclosed in Harrison's report.

B.  **Trial procedures**

The court provided some guidance on how it expects the trial to proceed. First, the court granted the request for sequestration of witnesses, noting possible exceptions that the parties will address in later submissions to the court.

Second, the court discussed its expectations regarding how cross examination of witnesses will be handled. Defendants will have to coordinate to decide: (1) which defense lawyer is going to take the lead on cross examination of each witness; and (2) which order the other lawyers will be asking questions. The court will not permit multiple lawyers to cover the same ground during an examination.

Third, the parties agreed that exhibits will need to be presented to the jury in digital form. The parties should be prepared to organize the electronic exhibits throughout the course of the trial and submit them to the court in batches so that the exhibits can be promptly provided to the jury at the beginning of deliberations.

Fourth, the parties are free to call witnesses from another party's witness list. But if a party intends to call a witness who was listed only on the list of a defendant who later pleads guilty, that party will need to promptly amend his witness list accordingly.

Fifth, the court will allow the defendants to conduct full examinations of government witnesses beyond the scope direct examination. The government's re-direct will be limited to the scope of the defense's examination and defendants' re-cross will be similarly limited. This will be more efficient and relieve witnesses of the need to return to the witness stand days or weeks later.

Sixth, by noon on September 30, the government must disclose to defendants the order of the government's witnesses for October 2 and October 3. After that, the parties must disclose

to the other side the witnesses they expect to call on a particular day by 6:00 p.m. two days earlier. For example, the government must disclose by 6:00 p.m. on October 2 the order of witnesses they expect to call on October 4.

Seventh, any trial evidence shown with openings must be pre-cleared as admissible, either by stipulation or by approval of the court. Any PowerPoint presentations that are used during opening statements should be filed on the docket at some point during the course of the trial.

**C. Deadlines**

The court imposed several new deadlines. By August 30:

- defendants will request any additional peremptory strikes, explaining how they propose to allocate them and why additional strikes are needed;

- the government will identify their reasons for requesting that case agents Josh Allen and Abigail Leslie remain in the courtroom as government representatives;

- the government will identify any victim witnesses that they believe are exempted from the sequestration order and why they believe they qualify for exemption;

- the parties will submit any objections to the court's proposal of selecting four alternate jurors;

- the parties will resolve any discrepancies in the spellings of the witnesses' names;

- the parties will notify the court of their positions on how to handle Count 3 and Count 8 in the jury instructions and the verdict form.

By September 5:

- Didion will file any renewed motion to dismiss Count 2 on vagueness grounds; any arguments should be focused on the court's jury instructions on Count 2, not on language from previous orders.

By September 12:

- the parties will submit any objections to the jury instructions, verdict form, and voir dire; this includes proposals for summaries of substantive instructions for the introductory instructions;

- the parties will submit updated witness lists that provide the following information: (1) whether the witness is expected to be called or may be called; (2) whether the witness is being called solely for impeachment purposes; and (3) a brief description of the witness's likely testimony;

- defendants will submit any request under Rule 32.2 for the jury to decide the forfeiture question;

- defendants will file their objections to the requests by the government to exempt case agents and victim witnesses from the sequestration order;

- the government will disclose to the defendants the edited versions of Exhibits 48 and 49 that they plan to present at trial;

- the government will respond to any motion by Didion challenging Count 2 on vagueness grounds.

By September 14:

- defendants will respond to the government's motion to exclude the testimony of Jeffrey Travis;

- the parties will submit updated lists of contested and uncontested exhibits, following this format: (1) the parties will collaborate and submit one document with all of the government's exhibits and defendants' objections to them, and one document with all the defendants' exhibits and the government's objections to them; (2) the parties will eliminate cumulative exhibits across exhibit lists; the same exhibit should not appear on multiple parties' lists; (3) the lists should identify the sponsoring witnesses; (4) the parties will identify the witnesses against whom the exhibit is being offered. The parties should not renumber their exhibits to account for withdrawn or excluded exhibits.

- the parties will submit briefs identifying categorical objections to the other sides' exhibits; the parties should focus on recurring objections that apply to a significant number of exhibits;

- defendants will explain any objections to Plaintiff's Exhibits 637 and 639 and the government's evidence about the sanitation crew discussed during the August 25 conference.

At the September 20 conference, the parties should be prepared to provide the following information:

- any witnesses who they intend to present remotely, along with the reason; and
- when the defendants will be giving their opening statements.

Entered August 25, 2023.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge